# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| ANDREW ASHBY, | CASE NO. 07CV119 JLS (CAB) |
|---|---|
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| UNDERWRITERS AT LLOYD'S, LONDON, | (Doc. No. 14) |
| Defendant. | |

This action arises out of Andrew Ashby's ("plaintiff") disputed claim for disability benefits pursuant to a Professional Athlete's Insurance Policy ("Policy") issued by Underwriters at Lloyd's, London ("defendant"). Defendant has moved for summary judgment, arguing that plaintiff did not suffer a "permanent, total disablement" within the meaning of the Policy and/or that plaintiff's lawsuit is time-barred by the Policy's limitations provision. (Doc. No. 14.) For the reasons stated below, the Court denies the motion.

## BACKGROUND

**A.   Facts**

   1.   <u>Relevant Policy Provisions</u>

Defendant issued the Policy to plaintiff effective February 26, 2003 to February 26, 2004. (Answer ¶ 7.) The Policy lists plaintiff's occupation as "professional baseball player–pitcher" and provides coverage for "Permanent Total Disablement Accident or Sickness." (Policy Declaration

Page.) The Policy defines "permanent total disablement" as "the Assured's complete and total physical inability to engage in his occupation . . . for 12 continuous months. Provided that at the end of such 12 months, the Assured is adjudged . . . to be completely unable ever again to engage in such stated occupation." (Id. "Definition".) The Policy provides coverage

> against any bodily injury caused by an accident occurring during the certificate period . . . which shall solely and independently of any other cause within 12 months from the date of such accident . . . results in the commencement of the Permanent total disablement, as herein defined, of the Assured and thereby prevents him from continuing his occupation as stated in the declaration page.

(Id. "Loss of Services Insurance".)

The Policy further explains that "[a]ny claim . . . shall be subject to the approval of two independent medical referees, one to be appointed by the Assured and one by the Underwriters." (Id. Part I–Agreements ¶ 1.) If those two referees do not agree, the Policy provides for the American Medical Association to appoint a third referee, whose decision "shall be final and binding upon all parties." (Id.) The Policy states additional preconditions for the payment of claims:

> No benefit will be payable under this certificate unless the Assured shall be continuously and Permanently totally disabled as the result of such bodily injury or sickness for a period of 12 months during which the Assured is prevented from continuing his occupation . . . at any time during such period and unless at the expiration of such 12 months period the Assured is deemed in the opinion of the aforesaid referees, to be completely unable to engage in such occupation without hope of improvement.

(Id. ¶ 2.)

In addition, the Policy provides:

> [n]o action at law or equity shall be brought to recover under this certificate prior to the expiration of 12 months from the commencement of the Permanent and total disablement. . . . No such action shall be brought after the expiration of three years from the commencement of such Permanent and total disablement.

(Id. Part IV–Conditions ¶ 8.) International Risk Management Group ("IRMG") managed claims for Underwriters. (Gleason Decla. ¶ 1.)

2.     Plaintiff's Claim

Plaintiff began his career as a professional baseball pitcher in 1992. (Ashby Decla. ¶ 9.) In April 2004, plaintiff, through his agent Mark Gilliam Enterprises, submitted a completed "Disability Claim Form." (Gleason Decla., Exhibit B, at 1.) The Disability Claim Form

represented that plaintiff became totally disabled in September 2003 and had undergone "Tommy John" surgery[1] in October 2003. (Id., Exhibit B, at 2.) IRMG reviewed medical records and reports from plaintiff's treating physicians, including a Scripps Clinic Annual Examination ("SCAE") from February 24, 2005. (Id. ¶ 9.) The SCAE report includes the following notation: "elb well healed/ no pain w/ valg stress/ <5% flex contraction."[2] (Id., Exhibit C, at 9.) The examining physician checked the "No restrictions" box under the "Participation" heading. (Id., Exhibit C, at 10.)

Defendant denied plaintiff's claim and never paid Policy benefits. (Ashby Decla. ¶ 7.)

**B.  Procedure**

The instant complaint, filed on January 3, 2007 in state court and removed to this Court on January 18, 2007 based on diversity jurisdiction (Doc. No. 1), alleges that plaintiff suffered a bodily injury in September 2003 and, as a result of the injury, sustained a covered loss. The complaint further alleges that defendant failed to make a payment on his claim, thereby breaching both the insurance contract and the implied covenant of good faith and fair dealing. Plaintiff seeks damages and declaratory relief. Upon removal, the action was originally assigned to the Hon. John A. Houston.

Defendant answered the complaint on January 24, 2007. (Doc. No. 2.)

Defendant moved for summary judgment on May 3, 2007. (Doc. No. 14.) Plaintiff filed his opposition to the motion on June 28, 2007. (Doc. No. 17.) Defendant filed its reply on July 5, 2007. (Doc. No. 18.) Judge Houston held a motion hearing on July 12, 2007 and then took the matter under submission.

This action was reassigned to the Hon. Janis L. Sammartino on November 15, 2007. This Court heard additional oral argument on February 1, 2008 and re-submitted the motion.

//

---

[1] The "Tommy John" surgery reconstructed plaintiff's ulnar collateral ligament in his right elbow and cleaned out additional bone spurs. (Gleason Decla. ¶ 8; Ashby Decla. ¶ 11 & Exhibit 3.)

[2] Based on her prior occupation as a registered nurse for over ten years, Gleason represents that "valg stress" is a reference to the Valgus Stress Test, which is used to diagnose ulnar collateral ligament problems. (Gleason Decla. ¶¶ 1, 9.)

## LEGAL STANDARD

Summary judgment is properly granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the initial burden of establishing an absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Where the party moving for summary judgment does not bear the burden of proof at trial, it may show that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case." Id. at 325. A moving party not bearing the burden of proof at trial is not required to produce evidence showing the absence of a genuine issue of material fact, nor is it required to offer evidence negating the moving party's claim. Lujan v. National Wildlife Fed'n, 497 U.S. 871, 885 (1990); United Steelworkers v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989).

Once the moving party meets the requirements of Rule 56, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Without specific facts to support the conclusion, a bald assertion of the "ultimate fact" is insufficient. *See* Schneider v. TRW, Inc., 938 F.2d 986, 990-91 (9th Cir. 1991). A material fact is one that is relevant to an element of a claim or defense and the existence of which might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)(citing Anderson, 477 U.S. at 248).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions,

1  not those of a judge, [when] . . . ruling on a motion for summary judgment." <u>Anderson</u>, 477 U.S.
2  at 255.

### DISCUSSION

Defendant moves for summary judgment on the grounds that (A) as a matter of law, plaintiff has not suffered a "permanent, total disablement," as defined under the Policy; and (B) plaintiff is barred from bringing the instant suit by the Policy's three-year limitations provision. The Court considers and rejects both grounds below.

**A.     Whether plaintiff has suffered a "permanent, total disablement"**

Defendant argues that plaintiff did not present adequate medical evidence to establish that his claim qualified for Policy coverage. Plaintiff did not show, first, that he suffered from a permanent and total disablement, nor, second, that any such permanent and total disablement was caused exclusively by his September 2003 bodily injury. Defendant claims that it was under no obligation to initiate the Policy's independent medical review process because plaintiff, in the first instance, failed to satisfy his burden of proving that the claim fell within the scope of coverage. <u>See</u> <u>Pan Pac. Retail Props., Inc. v. Gulf Ins. Co.</u>, 471 F.3d 961, 970 (9th Cir. 2006) ("In an insurance coverage action, the insured has the burden to prove that the claim falls within the basic scope of coverage"); <u>Goomar v. Centennial Life Ins. Co.</u>, 855 F. Supp. 319, 326 (S.D. Cal. 1994) ("In insurance disputes the burden is on the insured to prove all facts necessary to show that his claim falls within the terms and conditions of coverage.")

The Court declines to adopt defendant's construction of the Policy, as a matter of law. The Policy states that "[a]ny claim . . . shall be subject" to the independent medical review process. (Part I–Agreement ¶ 1.) Defendant points to no Policy provision that would excuse the parties from pursuing this review before defendant made its decision about coverage. At oral argument, defendant emphasized the Policy's requirement that the insured be "adjudged . . . to be completely unable ever again to engage in" his occupation and the absence of any such adjudication in this case. (<u>See</u> Policy "Definition".) However, the Policy states that the adjudication must take place "in accordance with the provisions of paragraph 1 of Part I–Agreements," <u>i.e.</u>, the section of the Policy detailing the independent medical review process. Because no independent medical review

1  took place in this case, defendant arguably failed to adjudicate plaintiff's claim in accordance with
2  the relevant Policy provisions.  Therefore, defendant cannot prevail on summary judgment merely
3  by alleging an absence of evidence to support plaintiff's case.[3]

4  Furthermore, the Court rejects defendant's argument that the evidence relied on to deny the
5  claim establishes, as a matter of law, that plaintiff was not permanently and totally disabled.  Here,
6  Ms. Gleason is a co-founder and president of IRMG (Gleason Decla. ¶ 1), but apparently not the
7  claims manager who reviewed plaintiff's claim.  Gleason's declaration explains that, "[d]uring the
8  course of its investigation, IRMG obtained copies of medical records and reports from [plaintiff's]
9  various physicians and surgeons."  (Id. ¶ 9.)  Rather than provide the Court with the entire file that
10 IRMG reviewed, Gleason attached a single document: the SCAE report.  (Id., Exhibit C.)  Upon
11 review of the SCAE report, the Court finds that it consists mostly of a physician's barely legible
12 notations.  Based on knowledge gained in her prior career, Gleason purports to translate some of
13 those notations as they relate to plaintiff's elbow injury.  However, the Court is left in the dark as
14 to whether Ms. Gleason's translation is accurate or whether anything else in the SCAE report
15 might qualify those conclusions.  More importantly, Gleason's declaration does not explain why
16 the Court should treat the SCAE report as dispositive evidence that plaintiff did not suffer a
17 permanent and total disablement.  Taken alone, the isolated statements that plaintiff's elbow was
18 "well healed" and that his "Participation" had "no restrictions" do not provide final answers to the
19 questions of whether plaintiff had a "complete and total physical inability" to be a professional
20 baseball pitcher for twelve consecutive months or whether, at the end of that period, he was
21 completely unable ever again to pitch professionally.  For his part, plaintiff declares that the SCAE
22 report was merely a basic preseason physical, without the battery of diagnostic tests performed by
23 the orthopedists who originally examined plaintiff's September 2003 injury.  (Ashby Decla. ¶ 16
24 & Exhibit 2.)  Therefore, the Court finds a material dispute of fact concerning the scope of the

---

[3] The Court does not hold that the Policy, properly construed, required the parties to undergo the independent medical review process.  Instead, the Court's analysis shows that the Policy could be construed in a way that is different from the construction urged by defendant.  In other words, defendant cannot establish, as a matter of law, that plaintiff's burden of proving that his claim falls within the scope of coverage allows defendant to deny plaintiff's claim without invoking the independent medical review process. The viability of an alternative interpretation precludes the Court from granting defendant's motion for summary judgment.

- 6 -                                                                                                       07cv119

1  SCAE, which precludes the Court from granting summary judgment on the issue of whether the
2  medical evidence in the record mandated the denial of plaintiff's claim.

3  **B.     Whether plaintiff's claim is contractually time-barred**

4  Plaintiff initiated this action in San Diego County Superior Court on January 3, 2007.
5  (Notice of Removal, Exhibit A, at 1.)  The Policy bars recovery actions "brought after the
6  expiration of three years from the commencement of [the] Permanent total disablement."  (Part
7  IV–Conditions ¶ 8.)  If plaintiff had any permanent and total disablement, it commenced when
8  plaintiff was injured in September 2003.  Defendant argues that plaintiff's lawsuit is time-barred,
9  therefore, because plaintiff filed more than three years after the commencement of the
10  disablement.

11  Plaintiff responds, <u>inter alia</u>, that the Policy's limitations period is unenforceable because it
12  conflicts with mandatory language required by the California Insurance Code.  Section 10350
13  requires that any disability policy delivered to a person in California must include twelve specific
14  provisions as codified in §§ 10350.1-12, or "substitute . . . corresponding provisions of different
15  wording approved by the commissioner which are in each instance not less favorable in any
16  respect to the insured or the beneficiary."  One such required provision is § 10350.11, "Limitation
17  of actions on policy," which reads as follows:

18  > A disability policy shall contain a provision which shall be in the form set forth
19  > herein.
20  > Legal Actions: No action at law or in equity shall be brought to recover on this
21  > policy prior to the expiration of 60 days after written proof of loss has been
     > furnished in accordance with the requirements of this policy.  No such action shall
     > be brought after the expiration of three years after the time written proof of loss is
22   > required to be furnished.

23  California-mandated provisions take precedence over other language in the Policy, including any
24  language that conflicts with the statutorily required provisions.[4]  <u>Galanty v. Paul Revere Life Ins.</u>

---

25  [4] The Policy's limitations provision does not satisfy either prong of Insurance Code § 10350.
26  First, defendant submits no evidence that the California Insurance Commissioner approved the Policy's different wording.  Second, the Policy's limitations provision, which requires the plaintiff to
27  sue within three years of the commencement of the permanent and total disablement, is less favorable than § 10350.11, which requires the plaintiff to sue within three years of the deadline for furnishing proof of loss.  No Policy provision requires that the proof of loss be submitted simultaneously with
28  the commencement of the disability.  Therefore, § 10350.11 trumps the limitations provision in Part IV, Paragraph 8 of the Policy.

1  Co., 23 Cal. 4th 368, 375 (Cal. 2000); Interinsurance Exch. of the Auto. Club of S. Cal. v. Ohio
2  Cas. Ins. Co., 58 Cal. 2d 142, 145-46 (Cal. 1962).  Defendant responds that the Policy's failure to
3  include § 10350.11 is unavailing, since another mandatory provision renders plaintiff's original
4  claim untimely:

> A disability policy shall contain a provision which shall be in the form set forth herein.
>
> Proofs of Loss: Written proof of loss must be furnished to the insurer . . . in case of claim for loss . . . within 90 days after the date of such loss.  Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity, later than one year from the time proof is otherwise required.

10 Cal. Ins. Code § 10350.7.  Defendant claims that plaintiff's April 2004 proof of loss was untimely
11 because it was submitted more than ninety (90) days after plaintiff suffered injury in September
12 2003.
13     The Court begins its analysis by rejecting the argument that plaintiff ran afoul of § 10350.7
14 by untimely submitting his proof of loss more than ninety days after the initial injury.  Under §
15 10350.7, a policyholder must submit a proof of loss within 90 days of the "loss."  Given the
16 present state of the record, the Court cannot conclude, as a matter of law, that the "loss" occurred
17 on the date that plaintiff initially suffered the injury.  Defendant points the Court to no other Policy
18 language that would support such a construction of the term "loss".  Indeed, the Policy language
19 suggests a different conclusion, i.e., that the "loss" occurred twelve months after the injury
20 occurred.  (See Part I–Agreements ¶ 2 ("No benefit will be payable . . . unless the Assured shall be
21 continuously and Permanently totally disabled as the result of such bodily injury . . . for a period
22 of 12 months[.]") & ¶ 3 ("but in no event shall any payment be made hereunder prior to the
23 expiration of 12 months from the commencement of such Permanent total disablement.")  Because
24 the proper construction of "loss" remains disputed, the Court declines to find that plaintiff's claim
25 was untimely when filed in April 2004, approximately seven months after the injury.[5]

---

[5] If a "loss" under the Policy does not occur until twelve months after the injury giving rise to the permanent and total disablement, plaintiff's claim may have been filed prematurely.  The Court need not reach that issue, however, because the single question before the Court is the timeliness of plaintiff's claim.

The Ninth Circuit has explained that § 10350.11 is a "contractual limitations period[] which operate[s] distinct and apart from the statutory limitations period set by the state legislature." Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program, 222 F.3d 643, 648 (9th Cir. 2000) (en banc) (emphasis omitted).  In other words, a reviewing court must first determine whether plaintiff's suit complies with actual statutes of limitations, and, if so, then determine whether plaintiff's suit complies with § 10350.11, as a term read into the Policy.  Id. at 650; Heighley v. J.C. Penney Life Ins. Co., 257 F. Supp. 2d 1241, 1258 (C.D. Cal. 2003).  Here, defendant does not claim that plaintiff's lawsuit is barred by any actual statute of limitations, but, instead, by limitation provisions in the Policy.  Therefore, the Court focuses on the second prong of the analysis.

In applying the correct contractual limitations provision (i.e., reading the requisite § 10350.11 language into the Policy), the Court finds that plaintiff's action is not time-barred, as a matter of law.  Interpreting § 10350.11, the Ninth Circuit held, "If [the policyholder] provided proof that was adequate to put [the insurer] on notice of a claim . . . , his cause of action would be timely if filed within three years after he knew or had reason to know [the insurer] had denied his claim."  Williams v. Unum Life Ins. Co. of Am., 113 F.3d 1108, 1112 (9th Cir. 1997), overruled on other grounds by Wetzel, 222 F.3d at 649.[6]  Alternatively, the three-year period of § 10350.11 "is equitably tolled 'from the time the insured files a timely notice, pursuant to policy notice provisions, to the time the insurer formally denies the claim in writing.'"  Rodolff v. Provident Life & Accident Ins. Co., No. 01-CV-0768 H (AJB), 2002 WL 32072401, at *4 (S.D. Cal. Apr. 5. 2002) (quoting Prudential-LMI Commercial Ins. Co. v. Superior Court, 51 Cal. 3d 674, 678 (Cal. 1990)).  Here, defendant presents no evidence as to the date when plaintiff had actual or constructive knowledge of the denial of his claim, much less the date when defendant formally denied the claim in writing.  Depending on these dates, plaintiff's cause of action could have been

---

[6] Wetzel overruled Williams and earlier precedents on the issue of when a cause of action accrued under the Employee Retirement Income Security Act ("ERISA").  As Wetzel established that § 10350.11 was no longer a statute of limitations for actions alleging breach of a disability insurance contract (but, instead, acted as a separate contractual limitations provision), Wetzel further held that § 10350.11 did not provide the accrual rule for applying the statute of limitations.  Nonetheless, Williams remains good law for the proper construction of § 10350.11 as a contractual limitations provision.

1  timely (with or without the benefit of equitable tolling).  Lacking this dispositive evidence, the
2  Court cannot conclude, as a matter of law, that plaintiff's cause of action was contractually time-
3  barred.[7]

**CONCLUSION**

For the reasons stated herein, the Court **DENIES** defendant's motion for summary judgment.

IT IS SO ORDERED.

DATED:  March 6, 2008

Honorable Janis L. Sammartino
United States District Judge

---

[7] Having found that, pursuant to § 10350.11, plaintiff's action is not time-barred, the Court declines to reach plaintiff's additional arguments that the Policy's limitations provision is unconscionable or tolled by the parties' failure to appoint referees pursuant to the Policy's independent medical review provisions.